UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RAUL CONTRERAS #0433407

                PETITIONER,           Case No. 2:23-CV-10703
                                            Honorable Matthew F. Leitman
V                              Magistrate Elizabeth A. Stafford

MICHAEL BOUCHARD,

                RESPONDENT.

_____/

**RAUL CONTRERAS #0433407**      **BROOKE E. TUCKER (P79776)**
Pro Se                            Senior Assistant Corporation Counsel
Oakland County Jail             Attorney for Respondent
1201 N. Telegraph Rd., Bldg. 10E    1200 N. Telegraph Road, Bldg. 419
Pontiac, MI 48341                Pontiac Michigan 48341
                                    (248) 858-2007

_____/

**Answer in Opposition to Petitioner's
Application for Writ of Habeas Corpus
Under 28 USC § 2241 by Person in County Custody**

## Statement of the Case

Michael Bouchard, hereinafter referred to as Respondent, held Raul Contreras, hereinafter referred to as Petitioner, under the authority of an Indictment and now holds him under a June 1, 2023 jury verdict finding him Guilty of all 11 counts against him. This verdict results from Petitioner's jury trial conviction of two counts of assault with intent to murder (counts 1 and 3), MCL 750.83; one count of discharging a firearm at a dwelling (count 5), MCL 750.234b(1) and/or (2); one count of malicious destruction of personal property, less than $1,000 (count 7); MCL 750.377a(1)(c)(i), two counts of malicious destruction of personal property, less than $20,000 (counts 8 and 10); and five counts of felony firearm (counts 2, 4, 6, 9, and 11), MCL 750.227b.

Prior to the trial and under 28 U.S.C. §2241, Petitioner challenges the constitutionality of his incarceration stating the following grounds:

I.  I am being held in custody as a State Pre-Trial Detainee in violation of the 8th and 14th Amendments to the United Sates Constitution; Michigan Constitution 1963 Art. 1 §15, 16 & §17. (Understood to be an Excessive Bail Challenge)

II.  I am being held in custody as a State Pre-trial Detainee in violation of the 6th and 14th Amendments of the United States Constitution; Michigan Constitution 1963, Art. 1, §20 & §17. (Understood to be a Speedy Trial Challenge)

III.  I am being held in custody as a State Pre-trial Detainee in violation of the 6th and 14th Amendments of the United States

Constitution; Michigan Constitution 1963, Art. 1, §20 & §17. (Understood to be an Ineffective Assistance of Counsel Challenge).

This Court should deny the application. In rare circumstances, state pretrial detainees may pursue habeas corpus relief in federal court under 28 U.S.C. §2241 but only two of Petitioner's claims are cognizable under § 2241, the excessive bail claim and the speedy trial claim. See *Atkins v. People of State of Mich.* 644 F.2d 543, 549 (6th Cir. 1981) (citations omitted*).* However, all of these claims are moot as the Petitioner was convicted of all charges by jury trial held last week. Further, Petitioner's claims have not been exhausted as Petitioner has not fairly apprised the state courts of the federal nature—if any—of the claims. Finally, Ground Three, ineffective assistance of counsel, is also not a cognizable issue under § 2241.

## Statement of the Facts

The charges in this case arose out of Petitioner's attempt to kill a man named John Alaniz who was at his home in Waterford Township in the early-morning hours of March 18, 2020, with his aunt, mother, little brother and three friends. 7/24/2020 Tr, p 11-13. Earlier, Alaniz had had arguments over the phone and the Facetime video-conferencing app with Petitioner and his co-defendant Martin. Id. at 13-14. Alaniz was dating Petitioner's ex-girlfriend at this time and she was pregnant with Alaniz's child. Id. at 52. There were discussions of a fight and Alaniz told Petitioner to come to his backyard to settle the matter; he would not go to them. Id. at 15.

A car playing loud music pulled up to Alaniz's house, which prompted Alaniz to walk outside. Id. at 15, 17. He saw a rifle pointing in his direction and another gun pointing out the back window of the car. Id. Petitioner was outside the driver's-side window with a long rifle atop the roof aimed at Alaniz. Id. at 18. Martin was aiming the pistol out the window. Id. at 26. Alaniz put his arms up to deescalate the situation. Id. at 20. He was not successful.

Petitioner took the first shot and then both gunmen proceeded to unload the clips in both guns. Id. Alaniz realized immediately he was hit in the shoulder. Id. He dove under his mother's car. Id. at 22. He reported that "three bones in my

4

shoulder exploded" when he was hit there. Id. at 24. He also was hit twice in the back and once in the hip. Id. at 25. When he ultimately ran back inside, he found bullet holes in the shower, his little brother (then nine years old) hiding under a bed and his mother terrified. Id. at 20. The family dog was dead, lying in a pool of his own blood. Id. at 20-21.

Tyler Squier, a witness, spent the evening into the early morning with Petitioner and Martin at Martin's house, playing videogames. Id. at 112. After the argument, he entered a vehicle with Petitioner, Martin, and another person whose name was also Tyler. Id. at 115. Eventually, the vehicle to Alaniz's house. Id. at 119. When the car parked, "[t]he guns started coming out." Id. at 119. Squier saw Martin put a clip in his gun and point it out the window. Id. at 122-23. He put his head down when he saw this. Id. at 124, 126. There were a lot of shots. Id. When the shooting was over, Squier saw Petitioner putting a brown and black long gun down by his feet. Id. at 124, 127, 128. Bullets had been coming out of that gun very fast compared to Martin's gun. Id. at 129. After the shooting, either Petitioner or Martin said something about going out of state. Id. at 130.

After the district court made its bindover decision, Petitioner asked for a reduction in bond. The district court asked Petitioner's then-attorney if it was true that Petitioner, at the time of these crimes, was on probation for possessing a long rifle in Waterford, with his conviction date the same year as these offenses (2020).

The answer was yes. Id. at 171. The district judge denied a reduction, citing the "seriousness of the charges." Id. at 173. Upon bindover, the sum of Petitioner's bond was $1,000,000 cash or surety. 5b.

On March 18, 2021, Petitioner consented to a substitution of counsel, with Pamela I. Johnson (P59236) replacing Arnold L. Weiner (P22104). Petitioner, through Johnson, filed a motion to reduce bond on June 9, 2021. Petitioner contended that the amount of bond was excessive. The People responded that Petitioner fired the first shot, sitting outside the driver's side window of his car with an assault rifle, an AR-15, itself atop the car. 6/182021 Bond Motion Response. The victim was hit five times. Id at 2. Petitioner was intoxicated when police responded to the scene. Id. Petitioner was on probation for the offense of possessing a firearm under the influence when the instant offense occurred. Id. The firearm he possessed during the instant offense was different than the one he possessed in the prior, as police had confiscated that one. Id.

Upon his arrest by the fugitive team, Petitioner was in the back seat of a vehicle. Within arm's reach, also in the backseat, was a backpack packed for travel, including multiple outfits of clothing, a toothbrush, toothpaste, and the AR-15 he used in the instant offense. Id. Petitioner's palmprint was on the magazine that was inside the AR-15 and his DNA was on the AR-15 itself. Id at 3. Officers determined that shell casings they found at the scene of the shooting were fired

from Petitioner's gun. Id. at 4.

Petitioner's attorney told the trial court that it had reduced a co-defendant's bond from $1 million to $500,000 cash/surety or 10 percent. 6/23/2021 Tr, p 3. The court distinguished Petitioner's circumstances from the co-defendant. The co-defendant did not have a criminal record and was not the actual shooter, whereas Petitioner was the shooter and was on probation for a weapons offense when he committed the instant offense. Id. The court denied the motion to reduce bond. Id. at 10.

The court scheduled trial for January 21, 2022, at 8:30 a.m. See register of actions. About six weeks before trial, Petitioner's then-attorney, Johnson, sought to withdraw due to having obtained employment with the State of Michigan. The court thereafter appointed Steven P. Lynch (P47008) as Petitioner's third counsel. 12/19/21 Order. On December 16, 2021, the court adjourned trial to March 1, 2022, at 8:30 a.m. See register of actions. On March 7, 2022, the court identified the matter as a "priority criminal case" and designated June 27, 2022, as the trial date. 3/1/2022 Order.

On June 19, 2022, the court granted Lynch's motion to withdraw as Petitioner's attorney. 5/20/2022 Order. The court scheduled a pretrial conference for June 9 and trial for September 12, 2022. Id. On June 9, the court scheduled another pretrial conference for June 7, 2022. See register of actions.

7

Via Petitioner's fourth counsel, Paulette Michel Loftin (P71982), Petitioner filed another motion to reduce bond in July 2022. 7/5/2022 Bond Motion. Petitioner requested the court lower his bond, with a GPS tether, so as to allow him to live with his mother and work in the county. Id.

During argument on the second motion, which did not raise any federal Constitutional grounds, Loftin told the court Petitioner had been in custody for 840 days and conceded that some of the delay in bringing the case to trial were Petitioner's fault, "but some of that was not his fault." 7/13/2022 Tr, p 3. Loftin contended that the most recent trial delay was due to a forensic mental-health referral for the co-defendant. Id. at 4. The assistant prosecutor noted that there was little in the new bail motion that differed from the previous motion. "The risk to public safety is great." Id. at 5. The trial court commented that it did not "take lightly" the delay in bringing the case to trial, but that the Court had made several efforts to give Mr. Contreras an opportunity at trial. This was previously set for trial. The Court was ready and prepared to go. Petitioner asked for new counsel in which the Court wanted to make sure that he was adequately represented with counsel that was appropriate when he felt comfortable with Petitioner and would proceed to trial.

Id. at 5. The next available trial date was September "to give you an opportunity to have time with your counsel to prepare for trial and have adequate

time within the courthouse's schedule to give you the same." Id. at 5-6.

At a later pretrial hearing, the assistant prosecutor informed the trial court that a former jail inmate, Scott Andrew Witzke, who was not a lawyer, was filing legal papers on behalf of criminal defendants, including Petitioner. 12/15/2022 Tr, pp 3-4. One of the filings was a motion in the Court of Appeals to review Petitioner's bail. Id. at 4. The assistant prosecutor said she had reviewed electronic communications between Petitioner and Witzke in which Petitioner authorized Witzke to file the papers, including filing an appeal in the Michigan Supreme Court (the appeal of the denial of bond modification). Id. The assistant prosecutor had received e-mails from the non-lawyer seeking concurrence in a motion to dismiss the case on speedy-trial grounds. Id. The filings that read "in pro per" were not the work product of Petitioner. Id. at 6. That motion was filed by Witzke, thrown out by the Judge, refiled in *pro per* by Petitioner as a Motion to Quash and, on January 6, 2023, was denied by the Circuit Court. No written order was penned and no appeal of that order was filed.

In light of these developments, Loftin told the court "there has been a breakdown in our relationship as [Petitioner] is taking advice from someone who is not an attorney and having that person file things without me knowing." Id. at 6. After reviewing correspondence from Witzke to the assistant prosecutor, the trial court permitted Loftin to withdraw. Id. at 8. The trial court asked Petitioner how he

9

wanted to proceed now that his lawyer had withdrawn. Id. at 9. The petitioner

objected to his lawyer's withdrawal. Id. Petitioner said he wanted to proceed on his

own, without a lawyer. Id. at 10.

On December 12, 2022, the Court of Appeals unanimously denied the bond-

review motion. Docket event No. 14. A review of Petitioner's filings in that court

confirm that the non-lawyer Witzke filed the documents on Petitioner's behalf. See

docket event Nos. 1 and 7. The e-mail address appearing on those documents is

"witzkeparalaw@gmail.com[.]" E-mail correspondence appended to the reply is

signed by "Scott Andrew Witzke[.]" See docket event No. 7. Petitioner filed an

appeal of the Circuit Court's denial of the bond motion in the Michigan Court of

Appeals. Petitioner's non-attorney counsel, Witzke, filed a brief in the Court of

Appeals raising the following single question:

> I.    Whether a one million dollar bail/bond in this case without any
>       factual findings having been made by the Trial court on the
>       question of the affordability of such a bail/bond amounts to a de
>       facto order of detention and a violation of defendant-appellant's
>       rights under Const. 1963, Art 1, §§ 15-16; Us Const, Amend
>       VIII; And Us Const, Amend XIV?

In an order dated December 12, 2023, the Michigan Court of Appeals denied

the motion to review bail under MCR 6.106(H). Mich Ct App, No. 363869.

On December 15, 2023, Petitioner then filed a pro se application for leave to

appeal in the Michigan Supreme Court. This pro se application raised the same

issue that Petitioner raised in the Court of Appeals and one new issue stated that:

1.     This case presents the opportunity for the court to examine
       whether a recent settlement agreement reached by parties in
       separate federal court litigation has resulted in a disparity in
       pretrial release decisions made throughout the courts and in the
       state and whether that disparity constitutes "invidious
       discrimination" under the equal protection clause of US Const,
       Amend XIV with respect to Defendant's one million dollar
       bond set in the Trial Court.

In Circuit Court, meanwhile, the court appointed a fifth counsel for

Petitioner at a later hearing. 1/4/2023 Tr, p 13. The court observed, "If I give you a

trial in two weeks, it's not likely that a new attorney's gonna be ready to try your

case in two weeks." Id. at 13-14. The court informed Petitioner that the new

attorney would be the "final attorney I am going to appoint for you." Id. at 14.

Witzke, for Petitioner, then filed an application to the Michigan Supreme Court.

See docket event No. 15 On January 26, 2023, the circuit court ordered Petitioner

to have no contact with Witzke. Frederick J. Miller (P41207) was Petitioner's final

trial attorney. The circuit court scheduled trial to begin May 30, 2023.

In an order dated March 10, 2023, the Michigan Supreme Court denied

Petitioner's application for leave to appeal "because we are not persuaded that the

questions presented should be reviewed by this Court." Mich Sup. Ct. No. 165106.

This Petition for a Writ of Habeas Corpus followed March 27, 2023 seeking

relief pursuant to USC § 2241, and this Court has issued an order requiring a

responsible pleading from Respondent. The Circuit Court did begin trial May 30, 2023, and Petitioner was convicted on all 11 counts on June 1, 2023.

Additional pertinent facts may be discussed in the body of the argument section of this answer, *infra*, to the extent necessary to fully advise this Court as to the claims raised by Petitioner on federal habeas review.

# ARGUMENT

Petitioner filed this pre-trial petition in March of 2023, his trial proceeded May 30, 2023 and concluded June 1, 2023, and Respondent's response to the petition is due June 6, 2023. This Court should not review any of the Petitioner's claims because post-trial they are moot and also because have not been exhausted, resulting in a lack of jurisdiction. Claim three is also not cognizable under § 2241. In addition, Petitioner's claims generally lacks merit and, if there were jurisdiction, they should be found as nothing more than frivolous. Although Petitioner has been tried since filing this Petition and has failed to exhaust the claims presented in this Petition, thereby preventing this Court from reviewing the claims, an examination of Petitioner's Petition further substantiates the fact that the Petition is frivolous and lacks merit.

## Mootness

Petitioner's claims concerning his pre-trial confinement became moot once he was convicted. As stated, after filing the present petition, Petitioner was tried by jury from May 30, 2023 to June 1, 2023 in the Oakland County Circuit Court. He was convicted on all counts and now awaits sentencing for that conviction. See 6/1/2023 Verdict Form. This Court no longer retains jurisdiction over the claims in this petition. In order for federal courts to retain jurisdiction over a case, there must

13

be an "actual, ongoing controvers[y]," and the absence of one renders a case moot

and deprives the court of subject matter jurisdiction. *Fed'n of Adver. Indus.*

*Representatives, Inc. v. City of Chicago*, 326 F.3d 924, 929 (7th Cir. 2003);

*Jackson v. Clements*, 796 F.3d 841, 843 (7th Cir. 2015).

**Exhaustion**

Petitioner filed the present habeas petition under 28 U.S.C. § 2241. It is

appropriate for pretrial detainees to pursue habeas relief under § 2241. See *Atkins*

*v. Michigan, 644 F.2d 543, 546 n.1 (6th Cir. 1981)*. The standards that apply to *§*

*2241* petitions, as opposed to those under §2254, are significantly less demanding.

If asserted by way of habeas corpus, however, the petitioner must

demonstrate that state remedies have been exhausted. Then, as in the case of

federal review of the state's duty to afford a prompt trial under the speedy trial

clause, consideration of the right to bail pending trial avoids the concerns

militating against piecemeal appeal or federal interference in state criminal

proceedings. The exhaustion requirement is satisfied only when a petitioner has

"fairly apprised" or "fairly presented" the substance of each of his federal claims to

the state courts. *Franklin v. Rose,* 811 F.2d 322, 325-326 (6th Cir. 1987); *Tuggle v.*

*Seabold,* 806 F.2d 87, 91 (6th Cir. 1986).  This includes a requirement that the

applicant present the issue both to the state court of appeals and the state supreme

14

court. *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009) (citation omitted).  While

a habeas petitioner need not cite federal constitutional law "chapter and verse,"

*Franklin*, 811 F.2d at 326, it is not enough that all the facts necessary to support a

federal claim were before the state courts or that a somewhat similar state law

claim was made. *Shoultes v. Laidlaw,* 886 F.2d 114, 117 (6th Cir. 1989).

## CLAIM ONE: EXCESSIVE BAIL

**I.      Petitioner's first claim of excessive bail is moot and the Circuit Court did not act arbitrarily in setting that bail.**

Excessive bail is one of the limited number of claims cognizable in a *§ 2241* pretrial petition. *United States ex rel. Garcia v. O'Grady, 812 F.2d 347, 355 (7th Cir.1987)*. But in reviewing the **[*7]** state court's bail determination, this Court may neither "substitute its opinion as to what an appropriate amount of bail should be nor decide what factor should be given the greatest weight." *Id.* In other words, it is not the role of this Court to "conduct a *de novo* bond hearing," as that "would [ ] represent an unwarranted interference in the operation of the state's criminal justice system" in violation of the *Younger* doctrine. *United States ex rel. Fitzgerald v Jordan, 747 F.2d 1120, 1133 (7th Cir. 1984)* (citations omitted). Rather, the sole issue to be resolved by this Court is "whether the state judge has acted *arbitrarily* in setting that bail." *Id.*

This Court should look at the merits of the bail issue. The Michigan Constitution and statutes provide that before conviction all persons shall be permitted release on bail, except in cases involving murder or treason "when the proof is evident or the presumption great." *Mich.Const. Art. I, § 15*; Mich.Stat.Ann. § 765.5. The Michigan Court Rules, promulgated by the state Supreme Court,

16

provide that if a lower court's bail decision is reviewed, it "remains in effect and may not be vacated, modified, or reversed except on a finding of an abuse of judicial discretion." Rule 790.7(d). In Atkins' case the Court of Appeals twice cancelled the bond set by the trial court, giving reasons for the action on neither occasion. The parties and the court below have debated the possible reasons for the bail amount before the trial court.:

The petitioner has failed to present any Constitutional grounds for his most recent excessive bail motion to the trial court. His later assertion of those rights to the Court of Appeals and the Michigan Supreme Court is not enough to overcome this failure at the trial court level. Even if it were, this Court cannot find that the trial court acted arbitrarily. The brief to the Michigan Supreme Court summarizes the facts well, stating that at the trial court:

> The People responded that Defendant fired the first shot, sitting outside the driver's side window of his car with an assault rifle, an AR-15, itself atop the car. The victim was hit five times. Defendant was intoxicated when police responded to the scene. Defendant was on probation for the offense of possessing a firearm under the influence when the instant offense occurred. Id. The firearm he possessed during the instant offense was different than the one he possessed in the prior, as police had confiscated that one.
>
> Upon his arrest by the fugitive team, Defendant was in the back seat of a vehicle. Within arm's reach, also in the backseat, was a backpack packed for travel, including multiple outfits of clothing, a toothbrush, toothpaste, and the AR-15 he used in the instant offense. Defendant's palmprint was on the magazine that was inside the AR-15 and his

DNA was on the AR-15 itself. Officers determined that shell casings they found at the scene of the shooting were fired from Defendant's gun.

The facts given alone support the bail amount set by the court but in addition to the circumstances of Petitioner's co-defendant (who did post bail at one point and flee the jurisdiction for months), it cannot be said that the court acted arbitrarily in setting the bond amount. At oral argument, the state has demonstrated a willingness to commence trial of this action, and indeed, the rotation of five separate appointed defense counsel did not change the states willingness or ability to try the case and make any bail unnecessary (moot), as it is now post-trial. However, if Petitioner is attempting to present this Court with a federalized incarnation of this claim and the motion made to the trial court , Petitioner did not fairly apprise the state courts as to the federal nature of the claim and, therefore, it is has not been exhausted as.

Further, Petitioner's pro se application for leave to appeal in the Michigan Supreme Court simply duplicated these claims (and their state law case authorities) as they were presented in the Michigan Court of Appeals, which did, for the first time present a federal constitutional claim.

In determining whether Petitioner has fairly presented a federal constitutional claim to the state courts, this Court should consider:

[W]hether (1) the petitioner phrased the federal claim in terms of the pertinent constitutional law or in terms sufficiently particular to allege a denial of the specific constitutional right in question; (2) the petitioner relied upon federal cases employing the constitutional analysis in question; (3) the petitioner relied upon state cases employing the federal constitutional analysis in question; or (4) the petitioner alleged facts well within the mainstream of the pertinent constitutional law. *Blackmon v Booker,* 394 F3d 399, 400 (CA 6, 2004).

For the reasons discussed *supra*, Petitioner did not "fairly present" the federal nature of this claim—if any—to the state courts.

**Conclusion to Claim One**

This claim is moot. In short, this Court should not consider Petitioner's first claim in his application for habeas relief as the federal nature of the claim was not presented to the trial court in either his June 9, 2021, or his June 6, 2022, motion in the state courts. Further, if Petitioner is merely presenting the same state law claim he raised in his direct appeal, it is not cognizable on habeas review. If Petitioner is trying to present the claim to this Court in a newly federalized incarnation, which was not offered to the trial court setting the bond, he did not fairly apprise the state courts of the federal nature of the claim and, therefore, it has not been exhausted.

**CLAIM TWO: SPEEDY TRIAL**

**II.    Petitioner's second claim of a speedy trial violation, is moot,
has not been exhausted, and this court should abstain from
the exercise of jurisdiction over this claim under 28 U.S.C §
2241.**

While this claim is moot, Petitioner's second claim in his application for

habeas relief is that he was denied his right to a speedy trial since he has been in

custody for thirty-six months.  He states that he has demanded a trial but admits in

his application that he has not presented this argument "in all appeals that were

available.". Indeed, except for one motion (labeled a motion to quash) the issue of

a speedy trial was not raised anywhere. The trial court denied the motion to quash,

and it was never appealed. If, however, this Court looks at the merits, that is, looks

at the reasonableness of the delay and whether the state is justified in having failed

to commence trial against Petitioner promptly. It is clear from the Register of

Actions that the great majority of this period was spent without ability to proceed

due to COVID or to the regular withdrawal and re-appointment of successive

defense counsel to represent the Petitioner.

At the outset, Respondent submits that Petitioner has been tried, beginning

May 30, 2023, when a jury was empaneled, and his criminal trial began. Therefore,

as stated above, this issue is moot, and this Court should not exercise jurisdiction.

Looking to the merits, this claim, too, is frivolous.

Alleged speedy-trial violation challenges brought before trial generally

require exhaustion *Fisher v.* Rose, 757 F.2d 789, 792 (6th Cir. 1985). Although §

2241 establishes jurisdiction in the federal courts to consider pretrial habeas corpus

petitions, the courts should abstain from the exercise of that jurisdiction if the

issues raised in the petition may be resolved either by trial on the merits in the state

courts or by other state procedures available to the petitioner. See, e. g., *Ex parte*

*Royall, 117 U.S. 241, 6 S. Ct. 734, 29 L. Ed. 868 (1886)*; *Fay v. Noia, 372 U.S.*

*391, 417-20, 83 S. Ct. 822, 837-838, 9 L. Ed. 2d 837 (1963)*; Braden, supra; *Moore*

*v. DeYoung, supra*; *Brown v. Estelle, 530 F.2d 1280 (5th Cir. 1976)*; *United States*

*ex rel. Scranton v. New York, 532 F.2d 292 (2d Cir. 1976)*. Abstention from the

exercise of habeas corpus jurisdiction is justified by the doctrine of comity.

Intrusion into state proceedings already underway (or, as here, concluded) is

warranted only in extraordinary circumstances. Thus, the doctrine of exhaustion of

state remedies has developed to protect the state courts' opportunity to confront

initially and resolve constitutional issues arising within their jurisdictions and to

limit federal judicial interference in state adjudicatory processes. This argument is

especially forceful in a situation involving a speedy trial claim, because the drastic

nature of the relief usually granted dismissal of the case, could not be more

disruptive of pending state actions. *Strunk v. United States, 412 U.S. 434, 93 S. Ct. 2260, 37 L. Ed. 2d 56 (1973.*

The general argument against consideration of speedy trial habeas corpus petitions prior to exhaustion of state remedies is closely related to the doctrine that prevents appeal of adverse rulings on speedy trial motions. *United States v. MacDonald, 435 U.S. 850, 98 S. Ct. 1547, 56 L. Ed. 2d 18 (1978).*

**Conclusion to Claim Two**

This claim is moot. The trial began May 30, 2023, and concluded with Petitioner's conviction on all counts June 1, 2023. This issue was not exhausted by the Petitioner but it could be resolved by trial, therefore this court should abstain from exercising any jurisdiction as Petitioner has not met his burdens on this point and because the issue was resolved with trial on the merits in state court.

## CLAIM THREE: INEFFECTIVE ASSISTANCE OF COUNSEL

> **III.   Petitioner's third claim, ineffective assistance of counsel is moot, has not been exhausted, and is not cognizable under Federal habeas review under 28 U.S.C § 2241.**

This claim of ineffective assistance of counsel is moot as brought under § 2241, has not been exhausted, and is not cognizable. Claim three of Petitioner's petition for habeas corpus alleges ineffective assistance of counsel.  However, no facts whatsoever are stated to support this allegation.  Further, the Petitioner admits that he has not presented this ground in all appeals that were available to him. Finally, it is not even clear *which attorney* he seems to lodge this complaint against. As stated, Petitioner was represented by five separate attorneys and states that "counsel has withdrew [sic] over my objection twice for unreasonable reasons." Though he states that he has prepared a factual record, one does not appear in his petition, and he has failed to properly allege anything which might fall within the jurisdiction of this court.

The Petitioner may have added in this claim in the hope the court will take it upon itself to evaluate the claim. Without a basic reference to any constitutional violation or to the record demonstrating how Petitioner's counsel was ineffective, this Court is not obligated to review the claim.  "[A] claim for relief in habeas corpus must include **reference to a specific federal constitutional guarantee**, **as**

**well as a statement of the facts which entitle the petitioner to relief**." *Gray v. Netherland,* 518 U.S. 152, 162-63, 116 S. Ct. 2074 (1996) (citations omitted) (emphasis added).

In *Strickland,* the United States Supreme Court described a two-part test for determining whether a criminal defendant was denied his Sixth Amendment right to counsel due to the ineffectiveness of his counsel. First, the defendant must establish that counsel was "deficient" by showing that counsel committed errors so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 US 668, 687 (1984). This means that a reviewing court must determine whether the "identified acts or omissions were outside the wide range of professionally competent assistance." 466 US at 690. The reviewing court must consider the "facts of the particular case viewed as of the time of the time of the counsel's conduct" with the further caveat that "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." 466 US at 690.

Second, the defendant must show these serious errors by counsel prejudiced the defendant. 466 US at 691-692. In this context, this means that "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A

24

reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 US at 694.

**Conclusion to Claim Three**

In short, this Court should deny Petitioner's request for habeas relief in his third claim in his application as the claims are moot, they have not been attempted at any level (and, therefore, not properly exhausted) and they are not cognizable under a pre-trial habeas petition. He has not shown that the state courts' resolution of the claims of ineffective assistance of counsel raised in his direct appeal are contrary to—or an unreasonable application of—clearly established federal law as determined by the United States Supreme Court or an unreasonable determination of the facts based on the evidence presented during the state court proceedings (i.e. at a trial). Review by this Court of claim three in his application for habeas relief is therefore barred.

**Conclusion**

WHEREFORE, Respondent, through his attorney Brooke E. Tucker, Senior

Assistant Corporation Counsel, OAKLAND COUNTY CORPORATION

COUNSEL, respectfully requests that this Honorable Court DISMISS and/or

DENY Petitioner's Application for Writ of Habeas Corpus.

Respectfully submitted,

/s/ Brooke E. Tucker____

BROOKE E. TUCKER (P79776)
Senior Assistant Corporation Counsel
Attorney for Respondent
1200 N. Telegraph Road, Bldg. 419
Pontiac Michigan 48341
(248) 858-2007
tuckerbe@oakgov.com

DATED: June 6, 2023

## Certificate of Service

I hereby certify that on June 6, 2023, I electronically filed the foregoing papers with the Clerk of the Court using the ECF system which will send notification of such filing to the attorney(s) of record, and I hereby certify that I have mailed by United States Postal Service the same to the following non-ECF participants:

RAUL CONTRERAS #0433407
Oakland County Jail
1201 N. Telegraph Rd., Bldg. 10E
Pontiac, MI 48341

Respectfully submitted,

/s/ Brooke E. Tucker

BROOKE E. TUCKER (P79776)
Senior Assistant Corporation Counsel
Attorney for Respondent
1200 N. Telegraph Road, Bldg. 419
Pontiac Michigan 48341
(248) 858-2007
tuckerbe@oakgov.com